UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| IN RE CONTEMPT SANCTIONS AGAINST JOHN KILGALLON, Chief of Staff for the United States Marshals Service, DANIEL C. MOSTELLER, United States Marshal for the District of South Dakota, and STEPHEN HOUGHTALING, Chief Deputy United States Marshal for the District of South Dakota, individually and in their official capacities.<br><br>Defendants. | ORDER TO SHOW CAUSE<br><br>1:21-mc-01 |

"[A] community has the right to protect itself against an epidemic of disease which threatens the safety of its members." Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11, 27, 25 S. Ct. 358, 362, 49 L. Ed. 643 (1905) (Justice John Marshall Harlan). Justice Harlan wrote the Jacobson opinion against the backdrop of the smallpox epidemic and the City of Cambridge, Massachusetts's regulation requiring all inhabitants to be vaccinated. Id. at 13-14, 25 S.Ct. at 358-59. In rejecting a Constitutional challenge to the regulation, Justice Harlan observed that there are "manifold restraints to which every person is necessarily subject for the common good." Id. at 26, 25 S.Ct. at 361.

When the COVID-19 pandemic struck in early 2020, Chief Judge Roberto Lange of the District of South Dakota, with the concurrence of all Article III judges in this district, issued an order requiring all members of the public to wear a mask covering the nose and mouth while in a federal courthouse in the District of South Dakota. See First Amended Standing Order 20-02. The mask mandate was consistent with guidance from the Centers for Disease Control that COVID-19 spread through respiratory droplets and

that masks could significantly curtail the spread of the disease. [1] All judicial employees are required to wear a mask pursuant to a private directive from the Chief Judge. Pursuant to Amended Standing Order 20-2 and my directive, all persons in the federal courthouse in Aberdeen are required to wear a mask covering the nose and mouth whenever they are in shared space or are in another person's work-space.

There is no social distancing with the Marshals Service and defendants or between attorneys and their clients. Lack of social distancing can be resolved by people being fully vaccinated.

Earlier this year, vaccines became available to further protect people from death or serious illness as a result of COVID-19. When the vaccine became available to every adult in South Dakota, I and the other Article III judges in the District of South Dakota were considering whether or not we should and could order that no person may enter the United States District Court courtrooms or chambers unless they had been fully vaccinated. Any such directive would be consistent with the advice from the Centers for Disease Control ("CDC") that, in order protect yourself and others, you should, *inter alia*, get a COVID-19 vaccine. https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html, visited May 13, 2021. No Article III judge, including myself, has yet entered any such Order, except on a very limited and qualified basis, as will be discussed later.

The CDC still advises that "[a]nyone infected with COVID-19 can spread it, even if they do NOT have symptoms." https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html, visited May 13, 2021. There are currently five

---

[1] "COVID-19 spreads when an infected person breathes out droplets and very small particles that contain the virus. These droplets and particles can be breathed in by other people or land on their eyes, noses, or mouth. In some circumstances, they may contaminate surfaces they touch. People who are closer than 6 feet from the infected person are most likely to get infected." https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html, visited May 13, 2021.

COVID variants in the United States which "seem to spread more easily and quickly than other variants, which may lead to more cases of COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/transmission/variant.html, visited May 13, 2021. The CDC is still investigating whether the currently available vaccines protect against the variants and cautions that "[r]igorous and increased compliance with public health mitigation strategies, such as vaccination, physical distancing, use of masks, hand hygiene, and isolation and quarantine, is essential to limit the spread of the virus that causes COVID-19 and protect public health." *Id.*

Public health comes first. We are dealing with a disease which is highly infectious, that is easily transmittable indoors, and that can kill those infected. There is no right of any person to thwart this Court's safety measures to protect court personnel as well as the public. Certainly, no employee of another federal agency has the right to interfere with the Court's authority or the conduct of criminal and civil court proceedings.

Shortly after March 25, 2021, I caused a memo to be sent to all people working or who would be working at the United States Courthouse in Aberdeen, South Dakota. A copy of the memo is attached as Exhibit A. This included the owner of the building, the Aberdeen Development Corporation (to be circulated to the janitorial company serving the courthouse), Assistant U.S. Attorneys, U.S. Probation officers, I.T. providers, public defenders, and CJA panel members. Responses were received from many people.

I did not address the memo to employers, including the U.S. Marshal for the District of South Dakota, Daniel C. Mosteller. Without request, he involved himself in the matter and sent a letter dated April 15, 2021, attached as Exhibit B. In his letter, he attempts to assert rights and claimed problems between Deputy Marshals and the U.S. Marshals Service. Neither he nor the Marshals Service, including all defendants, would have any standing to assert possible rights of Deputy Marshals. I was asking the questions and not anticipating that the Marshal and the other defendants would be interfering in lawful rights of this Court to determine if unvaccinated and thus dangerous

people should be allowed in court chambers and the courtroom. Obviously, without knowing who has been vaccinated for COVID prevention, I would have no control and would be subjecting myself, an 83 year old judge still presiding over all cases in the Northern Division of the District of South Dakota, my court staff (one of whom has serious lung and heart problems and is very much at risk), jurors, lawyers, witnesses and defendants, to contract the virus. I was and am very concerned about unvaccinated people, including deputy marshals, transporting prisoners in close proximity in a closed vehicle. These prisoners have the right to expect that the Court will protect them from unnecessary risks to their health and safety. I fully intend to do so.

I was in Florida for much of the Winter. The U.S. Marshal sent me an e-mail several weeks ago to ask what the policy of the court would be as to Deputy Marshals coming into chambers and the courtroom without being vaccinated. I already knew of his letter explaining that deputies would not be answering any questions from the Court about vaccinations. I replied the same day, telling him that marshals and others who are not fully vaccinated would be excluded from chambers and the courtroom. He did not reply in any manner but he and others in the Marshals Service, including defendants, certainly knew long ago what the Court would be doing and had done. With that knowledge, they sent a deputy marshal to court, knowing that the deputy would refuse to answer the court's question. This may well have been an "in your face" policy. The Marshals Service is apparently under the mistaken thought that if they talk with another Article III judge, even the Chief Judge, they are talking to me. Certainly, the Chief Judge and the Chief Judges that preceded him have never even thought of telling another Article III judge how to run the courtroom.

I returned from Florida on Saturday, May 8. Court had been scheduled by court orders for many weeks and we had six hearings scheduled for Monday, May 10, and six more hearings scheduled for Tuesday, May 11. A deputy marshal from Sioux Falls, on May 10, entered the courtroom with a prisoner in tow. I asked her in the courtroom

4

whether she had been fully vaccinated.  She refused to answer and I ordered her to leave the courtroom and not return until I knew the answer to the question.  She attempted to take the prisoner from the courtroom and I told her to leave the prisoner where he was, with his attorney, at counsel table, so we could proceed with the hearing.  At least one court security officer (fully vaccinated) is at all times in the courtroom.  The refusing officer was very discourteous and frankly had to be told that she was bordering on contempt of court, whereupon she left and was replaced by a part time person under contract with the Marshals Service who told me he was fully vaccinated.  We continued with the a.m. hearings.

When ready to conduct the p.m. hearings, we learned that the Marshals Service had left the courthouse with the prisoners, without telling the Court or the assistant U.S. Attorney present, or the attorneys for the defendants scheduled for hearings, making it impossible for the Court to conduct the hearings long ago scheduled.  The Chief Deputy U.S. Marshal called at 2:12 p.m. when I was on the bench and left a message for me to call.  This was long after they had already "kidnaped" the defendants, apparently during the noon recess.  I attach a copy of what my administrative assistant gave me as a message.  This is Exhibit C.  He did not disclose to my administrative assistant that the marshals had already left with the defendants.  The Marshals Service thus directly violated previous orders for hearings and the rights of the defendants, their attorneys, the AUSA's, court personnel, and the Court itself.

I returned the call of Stephen Houghtaling, the Chief Deputy, from the courtroom and a transcript has been prepared and is attached as Exhibit D.  He did not answer the question of the court as to who made the decision to leave with the prisoners.  It was simply the Marshals Service.  I assume that an official in the Washington, D.C. office authorized and perhaps directed the action which may very well be subject to contempt sanctions.  I have never talked with John Kilgallon, the Chief of Staff for the Service nor with Marshal Mosteller.  The Marshal has never, since he took office under the Trump

5

administration, visited the courthouse in Aberdeen when I was present. I would not know him if I saw him on the street.

We finally, after quite some delay, conducted the balance of the hearings for Monday and Tuesday in a conference room one floor below, using a video connection. Each defendant consented to the hearing outside the courtroom, something, of course, that is required to conduct a video conference of that nature. I do not believe that conference room is even included in the GSA lease.

I do not believe that there is or ever was any policy that is consistently followed in Aberdeen by which at least two deputy marshals are in the courtroom for each hearing. A number of years ago, the then Chief Deputy Marshal wanted to hold all hearings, including criminal cases, with only court security officers present. I told him that I wanted at least one deputy in the courtroom for all hearings. They followed that policy for many years. It appears to be a subterfuge to now claim that two deputies must be in the courtroom. If there is or was such a policy, it has rarely been followed here.

Regardless of that fact, the question is whether the executive branch may adopt and maintain policies and procedures that severely interfere with the ability of the federal judiciary to run the courtrooms and chambers. I frankly do not care whether a deputy is present or not. I have great confidence in the five full-time court security officers in Aberdeen. There is not and has not been for sometime any resident deputy marshal in Aberdeen, the site of the Northern Division of the District of South Dakota. The Marshals Service has another illogical policy by which no deputy can be ordered to serve in any particular division or district. They wait for volunteers. I am not aware of any other agency or private employer who does not control where employees work. The nearest deputy marshal is 160 miles distant in Pierre or over 200 miles distant in Sioux Falls. I am more concerned about this total lack of local security than I am about court hearings where all coming into the courthouse are screened and sometimes searched and where masks are required of all. I am the safest in the courthouse. I had always thought

6

that the principle responsibilities of the Marshals Service was the protection of the federal judiciary. As it stands now, they could well be the most dangerous people in the courtroom in a given case. I do not know the answer to that as I have no information since deputies, with the encouragement and full support of their supervisors, are refusing to tell me whether they have been vaccinated or not.

It may be that the Marshals Service may not question deputies as to whether they have been vaccinated. I do not agree with that claim and I believe any employer should be questioning employees about Covid 19 vaccinations to protect the public and fellow employees. They are not, of course, my employees. All of that, however, is a separate issue. One of the questions here is whether the defendants should be instructing or at least encouraging deputies to refuse to answer a vaccination question posed by a United States District Judge in the courtroom. I believe they are very likely interfering with and obstructing the administration of justice, contrary to their oaths of office. The officials have had more than enough time to carefully consider the foolishness of their actions. All the Article III judges in the District of South Dakota have tried to completely cooperate with the marshals, all to no avail. They advance the claim that policies set by the executive branch, i.e. the Marshals Service, can override lawful directives and orders of Article III judges. Who is running the courts, judges or bureaucrats who themselves are sitting in their offices in the District of Columbia, totally not exposed to Covid problems in their work-places?

I attach also a letter from Chief Judge Lange as Exhibit E and the reply from the Chief of Staff of the Marshals Service as Exhibit F. I attach also a letter from one of my colleagues, Judge Karen Schreier, as Exhibit G. I attach as Exhibit H a two page memo from Chief Judge Lange to District employees. I do not know whether the defendants received this information. I attach a further e-mail to the defendants from Chief Judge Lange as Exhibit I with a portion of the response from defendant Kilgallon.

The recent announcement by the CDC that fully vaccinated people do not need to wear masks indoors makes no sense. Who would know who had been fully vaccinated and who has not? Thus, who would know who should absolutely be wearing masks and maintaining social distancing? As recently expressed by U.S. Senator Susan Collins of Maine, it seems like the CDC is no longer the "gold standard." The policy is obviously also creating mass confusion among employers in both the public and the private sector. We need answers from the federal judiciary.

I have never even attempted to monitor or supervise the actions of deputy marshals, unless they are in my presence and in the courtroom. What they do to expose themselves and others to deadly diseases is not something I can alter, unless they are subjecting federal prisoners or court officials to possible deadly situations. They show little concern about those threats.

As discussed above, the recent actions of the United States Marshals Service personnel in court and in the courthouse constituted direct disobedience to court orders. Following my sanction of requiring a Deputy U.S. Marshal to leave the courtroom for violating my order, the U.S. Marshals Service and defendants retaliated by "kidnaping" criminal defendants who had been ordered to appear before me. Those actions interfered with the administration of justice and were deliberately designed to do so, without regard to the statutory and constitutional rights of the criminal defendants, the busy schedules of the Department of Justice attorneys, Federal Public Defenders, Criminal Justice Act attorneys, and the disruption of judicial staff. Those actions constituted both in-court contempt and out-of-court contempt interfering with judicial proceedings. These rash and unreasonable actions caused each defendant to be in violation of a court order to appear for the given hearing, either a sentence hearing or a change of plea hearing.

The United States Supreme Court has long recognized that "the power to punish for contempts is inherent in all courts." Chambers v. NASCO, Inc., 501 U.S. 32, 44, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991) (quoting Ex parte Robinson, 19 Wall. 505,

510, 22 L.Ed. 205 (1874)).  Federal Courts are vested with the power "to impose silence, respect, and decorum in their presence, and submission to their lawful mandates."  Young v. U.S. ex rel. Vuitton et Fils S.A., 481 U.S. 787, 798, 107 S. Ct. 2124, 2133, 95 L. Ed. 2d 740 (1987) (*quoting* Anderson v. Dunn, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821)).  "The summary power to commit and punish for contempts tending to obstruct or degrade the administration of justice is inherent in courts of chancery and other superior courts as essential to the execution of their powers, and to the maintenance of their authority, and is part of the law of the land within the meaning of Magna Charta and of the twelfth article of our declaration of rights."  In re Nevitt, 117 F. 448, 455 (8th Cir. 1902) (*quoting* Cartwright's Case, 114 Mass. 230, 238).

"Because of their very potency, inherent powers must be exercised with restraint and discretion.  A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."  Chambers v. NASCO, Inc., 501 U.S. at 44–45, 111 S. Ct. at 2132–33 (internal citation omitted).

The United States Court of Appeals for the Eighth Circuit recently answered the question of whether persons can establish a religious exemption from mandatory immunizations for school children, claiming the protection of the First and Fourteenth Amendment rights.  The answer was "no."  *See* B.W.C. et al. v. Williams, et. al., 990 F.3d 619 (8th Cir. 2021).  The Court quoted from Prince v. Massachusetts, 321 U.S. 158, 166-67 (1944): "[N]either rights of religion nor rights of parenthood are beyond limitation . . . Thus, (a parent) cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds.  The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death."  B.W.C. v. Williams, 990 F.3d at 622 n 6.  Judge Benton also wrote for the panel (Judges Gruender and Stras concurring) that there was no constitutional violation to form the basis of the plaintiffs' 42 U.S.C. § 1983 claim, much less a "likely violation."  B.W.C. v. Williams, 990 F.3d at 622 n 7.  While not directly on point, this

opinion is very informative.

I am fully aware of the apparently upcoming advice from the administrative office of the United Courts.  I respectfully disagree with their advice.

The defendants should be required to appear personally before this Court and show cause, if any there be, why they should not be found to be in civil contempt of this Court, with possible monetary sanctions if found to be in contempt.  If the defendants will not admit service of this Order to Show Cause, the Marshals Service shall promptly accomplish service of process on the defendants.

Now, therefore,

IT IS ORDERED, that the defendants above named shall appear personally before this Court, in the United States Courthouse for the Northern Division of the District of South Dakota, at 10 o'clock a.m. on the _14th_ day of June, 2021, there and then to show cause, if any there be, why they should not be found to be in civil contempt of this Court and, if so found, to be punished accordingly with monetary sanctions and injunctions. The defendants, of course, have the right to be represented by counsel of their choosing, subject to possible conflicts of interest.

DATED this _19th_ day of May, 2021.

BY THE COURT:

_Charles B. Kornmann_

CHARLES B. KORNMANN
United States District Judge