UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JOHN KILGALLON, DANIEL C. MOSTELLER, and STEPHEN HOUGHTALING, <br><br> Defendants. | 1:21-cr-10023 <br><br><br> **REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS** |

John Kilgallon, Chief of Staff for the United States Marshals Service, through his counsel of record Ronald A. Parsons, Jr. and Scott A. Abdallah, Daniel C. Mosteller, United States Marshal for the District of South Dakota and Stephen Houghtaling, Chief Deputy United States Marshal for the District of South Dakota, through their counsel of record Marty J. Jackley, respectfully submit this reply in support of their motion to dismiss.

## REPLY ARGUMENT

**1.** From its first sentence, the response filed by the Special Prosecutor betrays a fundamental misunderstanding of the nature of these proceedings. The opposition brief begins with a claim that:

> The United States Marshal Service (USMS), by and through these named Defendants (collectively referred to as "the Defendants" or "the USMS", makes clear that the USMS believes that the Executive Branch – not the Judiciary – is the sole and "final authority" on how a courtroom will function.

(Brief at 1). But the USMS is not a party to these proceedings. The USMS is not acting "by and through these named Defendants." And what the USMS believes or does not believe is not on trial. Moreover, the individuals against whom the Judicial Branch has levied these specifications do not—and cannot—speak for the USMS, the Executive Branch, or the United States Government here. Their attorneys likewise do not represent and cannot speak for the USMS, the Executive Branch, or the United States, which has filed a Statement of Interest reflecting its official views. (Doc. 44).

Instead, this is a *criminal prosecution* of three honorable individuals that seeks to label them as criminals for, in the case of two of them, following the instructions of their leadership at USMS headquarters in Virginia in the implementation of Executive Branch policies concerning safety and security, and, in the case of the third, signing his name to a letter respectfully explaining those policies. To be sure, the Executive Branch and Judicial Branch need to resolve their apparent policy differences on these matters to whatever extent they persist. But respectfully, this is not the venue in which to try to accomplish that. The criminal prosecution of these men for an inter-branch governmental policy dispute is a mistake, one that can be corrected, and it is altogether fitting and proper that these charges be dismissed.

**2.** Hyperbole does not alter the analysis. The Special Prosecutor's brief offers up that "*the USMS appears to assert that it has the exclusive power to disobey, delay, and disrupt court orders and proceedings under the guise of providing*

*'judicial security,"* (Brief at 1), that *"they in essence argue they are 'beyond the reach of the law,"* (Brief at 11), that *"USMS is arguing here that the USMS can determine – at any time and for any reason – that 'security requirements' require removing prisoners and preventing them from appearing at a court ordered sentencing hearing without even consulting with the court,"* that *"the USMS appears to believe it can subvert the authority of the court, creating, instead of removing, obstructions to the exercise of justice,"* all of which purportedly requires that *"these Defendants, and the entire USMS as a whole, be made to answer and account for their own acts of disobedience in vindication of the court's authority."* (Brief at 15).

The law enforcement officials here, of course, do not believe that they are beyond the reach of the law, or that they have exclusive power to disobey and subvert the authority of the court, or to delay and disrupt court proceedings at any time and for any reason. No one believes such things. The situation was much more complicated. The district court had barred the Deputy U.S. Marshal from the courtroom and threatened her with arrest if she did not immediately abandon the violent prisoner committed to her custody and leave him there in violation of Executive Branch policies governing prisoner security.

The proper course of action in those emergent and literally unprecedented circumstances was—and perhaps still is—a matter of honest disagreement and especially difficult at the time to discern. The opposition brief's strategy of reframing things in a vastly oversimplified way in order to knock down assertions that no one has made—or ever would make—is unhelpful. *See, e.g., Keller v. City of*

*Fremont*, 719 F.3d 931, 944 (8th Cir. 2013) ("Having woven this straw man, it is of course easy to blow him down").

**3.** The opposition brief's derogation of the mandate in the United States Code that "[t]he United States Marshals Service retains final authority regarding security requirements for the judicial branch of the Federal Government," 28 U.S.C. § 566(i), as nothing but "relying entirely on a single sentence" also is unpersuasive. (Brief at 1). Brevity often promotes clarity and here, Congress has been remarkably clear. When the issue is courthouse or prisoner security, such as whether a Deputy U.S. Marshal may be physically separated from the prisoners committed to her custody, it falls within the province of the USMS.

The opposition brief places primary emphasis on the May 4, 2021 email exchange between the district court and U.S. Marshal Mosteller regarding the court's reported comments on a phone call that it would exclude non-vaccinated USMS personnel from the Aberdeen courtroom. (Brief at 13). Following that exchange on that same day, however, the Chief Judge, helpfully interceding to write on behalf of all of the judges in the District of South Dakota, reached out to USMS headquarters in Virginia and, before the hearings in question took place, respectfully was informed that official USMS policy at that time, based in part on existing guidance from the Administrative Office of the U.S. Courts, was not to inquire about or disclose the vaccination status of its employees. (Doc. 1-6).

More importantly, the Supreme Court has ruled out criminal contempt charges against federal law enforcement officials for adhering to valid Executive

Branch policies established by their superiors to govern their actions, a bright line of legal authority that the opposition brief declines to address. *See United States ex rel. Touhy v. Ragen*, 340 US 462, 468-69 (1951), *affirming United States ex rel. Touhy v. Ragen*, 180 F.2d 321, 324 (7th Cir. 1950).

**4.** The main thrust of the opposition brief is its insistence that once the Judicial Branch has launched criminal contempt proceedings, it may never choose to recall or dismiss the charges as improvidently brought, or for any other reason, but instead is irretrievably locked into holding a full-fledged criminal trial. In a typical criminal prosecution brought by the Executive Branch of the United States, that frequently may be so. But very few things about this case are typical.

Not surprisingly, the issue has rarely arisen. When courts reconsider or decide, for whatever reason, to dismiss criminal contempt specifications initially lodged, usually there is no one with the standing or inclination to file an appeal in protest that might result in a published decision. All of the authority that has been located by any of the parties addressing this exceptionally specific issue, however, holds that courts retain inherent authority to dismiss criminal contempt charges brought by the Judicial Branch. *See* 3A Fed. Prac. & Proc. Crim. § 709 (4th ed. April 2021 update) (explaining that "[t]he judge may dismiss contempt proceedings sua sponte before trial" and "[t]he pleadings may rest only on information and belief, but the court has discretion to require a showing of probable cause before giving notice or proceeding further with a hearing on the charge); *United States v. Kelsey-Hayes Co.*, 476 F.2d 265, 266 (6th Cir. 1973); *United States v. Barnett*, 346

F.2d 99, 100 (5th Cir. 1965).  Contrary to the implication in the opposition brief, a governing legal principle usually is not presented as black letter law in the *Wright & Miller* treatise unless it is generally accepted and considered uncontroversial.

Tellingly, none of the cases cited by the Special Prosecutor on this specific issue even involved criminal contempt, let alone such charges brought under the inherent authority of the Judicial Branch after the Executive Branch has affirmatively declined to bring them.[1]  There thus is no contrary legal authority on this precise question to which the Special Prosecutor can even allude.  The law enforcement officials charged here respectfully suggest that as a matter both of procedure and substance, dismissal in these circumstances is proper and warranted.

**5.**     Lastly, the opposition brief appears to the confuse the concepts of "summary contempt" under Rule 42(b), whereby a court "may summarily punish a person who commits criminal contempt in its presence if the judge saw or heard the contemptuous conduct and so certifies," and "petty contempt," which refers to the level of offense as determined by the punishment actually imposed.  (Brief at 16-17).

---

[1] The opposition brief spends most of its time focused on the general standards for a motion to dismiss under Rule 12(b), rather than the inherent authority of courts regarding criminal contempt charges brought by the Judicial Branch.  But notably, under Rule 58(a)(2), in the discretion of the district court, the Federal Rules of Criminal Procedure need not be applied in cases such as this involving petty offenses, where the court further decides, prior to trial, that no sentence of imprisonment will be imposed.  *See* 3B Fed. Prac. & Proc. Crim. § 913 ("However, Rule 58(a)(2) gives the court discretion as to whether to apply the Federal Rules of Criminal Procedure in petty offense prosecutions for which no sentence of imprisonment will be imposed"); *Lewis v. United States*, 518 U.S. 322, 338 (1996) (Kennedy, J., concurring) (same); *United States v. Harper*, 946 F.2d 1373, 1374-75 (8th Cir. 1991) (holding that rules applied, notwithstanding that crimes charged were petty offenses, because the district court neglected to make a determination, prior to trial, that no sentence of imprisonment would actually be imposed).

This Court's findings in section 11.A of its Order following the status conference, (Doc. 39 at 5), rendered this a case involving petty offenses as a matter of law to which there is no right to trial by jury. *See Int'l Union United Mine Workers*, 512 U.S. 821, 837 n.5 (1994); *In re Weeks*, 570 F.2d 244, 247 246 n.3 (8th Cir. 1978).

CONCLUSION

With respect, the Special Prosecutor's quest to "require that these Defendants, and the entire USMS as a whole, be made to answer and account for their own acts of disobedience," (Brief at 15), does not in turn obligate this Court to hold a criminal trial. The specifications pending in this matter can—and should— be discharged, and the points to be proved and policies to be discussed and debated between leadership of the Judicial and Executive Branches of the United States of America should take place at that level, not here.

WHEREFORE, U.S. Marshal Mosteller, Chief Deputy Houghtaling, and Mr. Kilgallon respectfully request this Honorable Court to grant the motion to dismiss.

Dated this 24th day of September, 2021.

| JOHNSON, JANKLOW ABDALLAH & REITER, L.L.P. | GUNDERSON, PALMER NELSON & ASHMORE, L.L.P. |
|---|---|
| By **RAPARSONS** | By *[signature]* |
| Ronald A. Parsons, Jr. | Marty J. Jackley |
| Scott A. Abdallah | 111 West Capitol Avenue, Suite 230 |
| P.O. Box 2348 | Pierre, SD 57501 |
| Sioux Falls, SD 57101-2348 | (605) 494-0105 |
| (605) 388-4304 | |
| *Attorneys for John Kilgallon* | *Attorneys for Dan Mosteller and Steve Houghtaling* |