# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>vs.<br><br>JOHN KILGALLON,<br>DANIEL C. MOSTELLER, and<br>STEPHEN HOUGHTALING,<br><br>      Defendants. | Case No. 1:21-CR-10023 |

## STATEMENT OF INTEREST OF THE UNITED STATES

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517[1] in support of defendants' motion to quash the subpoenas *duces tecum* issued by the special prosecutor to Verizon Wireless for cell phone records from Marshal Daniel Mosteller and Deputy Chief Marshal Stephen Houghtaling's government-issued cell phones. The United States has an interest in this matter because, as discussed below, the subpoenas seeks government information in connection with criminal contempt proceedings brought against federal employees acting in their official capacities.

---

[1] That statute provides: "The Solicitor General, or any other officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 517.

1

**INTRODUCTION**

The special prosecutor has issued procedurally and substantively defective subpoenas to Verizon Wireless seeking information implicating the federal government's equities. The United States concurs fully in the arguments made by defendants in support of the motion they have filed to quash the subpoenas. ECF No. 52. Two additional issues prompt the United States to file this Statement of Interest. First, because the subpoenas seek information from defendants' work cell phones, Verizon Wireless should not be compelled to produce any information to the special prosecutor until and unless the United States has been permitted to review the records and assert any appropriate privileges or other appropriate bases for nondisclosure that may apply to them.

Second, the subpoenas are facially overbroad, as they seek cell phone records from March 1, 2021 to May 12, 2021, despite the fact that the sole basis for possible criminal contempt is conduct that occurred on a single day— May 10, 2021. ECF No. 21 at 1. The subpoenas are thus unreasonable and oppressive, as they would require the federal government to expend substantial time reviewing the requested records for privilege and other bases for nondisclosure where no demonstrated relevance has been shown.

**BACKGROUND**

On August 20, 2021, defendants John Kilgallon, Marshal Mosteller, and Deputy Marshal Houghtaling moved to dismiss "all charges and specifications

pending against them under this Court's inherent authority[.]" ECF No. 45.[2] That motion is fully briefed and awaiting disposition. ECF No. 51.

Despite defendants' fully dispositive motion to dismiss, on September 29, 2021, Special Prosecutor Cassidy M. Stalley served subpoenas *duces tecum* to Verizon Wireless seeking "[a] list or report of all incoming and outgoing calls, call detail[s], text messages, picture detail[s], and internet sessions" for the official work phones of Marshal Mosteller and Chief Deputy Houghtaling "from March 1, 2021, to May 12, 2021, including the times of usage initiated and duration of use." ECF No. 52, Ex. A.

## LEGAL STANDARDS

The Supreme Court has explained that a subpoena *duces tecum* in criminal cases is not intended to provide a means of discovery in criminal cases, and is intended "to expedite the trial by providing a time and a place before trial for the inspection of subpoenaed materials." *United States v. Nixon*, 418 U.S. 683, 698 (1974) (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)). The special prosecutor bears the burden of showing that the information sought in the subpoena is (1) relevant; (2) admissible; and (3) made with adequate specificity. *Nixon*, 418 U.S. 700. As the Eighth Circuit has observed, "[t]hese specificity and relevance elements require more than the title of a document and conjecture of its contents." *United States v. Hardy*, 224 F.3d 752, 755-56 (8th Cir. 2000) (quashing criminal subpoena where defendant

---

[2] The United States filed a statement of interest in support of defendants' motion to dismiss. ECF No. 44.

3

could not set forth what the subpoena materials contained and concluding that claimed need for impeachment was insufficient). Even if the proponent of a subpoena *duces tecum* meets these requirements, the subpoena still may be quashed "if compliance would be unreasonable or oppressive." *See* Fed. R. Crim. P. 17(c); *United States v. Calandra*, 414 U.S. 338, 346 n.4 (1974); *Hardy*, 224 F.3d at 756. Furthermore, courts in this district have quashed criminal subpoena that call for information that may be subject to privilege. *United States v. Sam*, No. CR 06-50117-02, 2007 WL 2284602, *2 (D.S.D. Aug. 8, 2007) (quashing subpoena that called for the disclosure of materials protected by law enforcement privilege).

**ARGUMENT**

I. **THE COURT SHOULD PERMIT THE UNITED STATES TO REVIEW ANY MATERIALS BEFORE VERIZON PRODUCES THEM TO THE SPECIAL PROSECUTOR.**

The special prosecutor's subpoenas seek "a list or report of all incoming and outgoing calls, call detail[s], text messages, picture detail[s], and internet sessions" from the work phones for two federal law enforcement officers for a ten-week period of time. ECF No. 52, Ex. A. These subpoenas thus directly implicate the federal government's equities, as they seek information that likely is subject to various governmental privileges, such as the law enforcement privilege. *See Sam*, No. CR 06-50117-02, 2007 WL 2284602, at *2 (quashing subpoena that sought information subject to law enforcement privilege). By seeking records regarding the official work phones of federal law enforcement officials, the subpoenas implicate the law enforcement privilege, which is

4

"important to 'prevent disclosure of law enforcement techniques, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.'" *Id.* (quoting *In re Dep't of Investigation of City of New York*, 856 F.2d 481 (2d Cir. 1988)). Under these circumstances, if the Court concludes that the subpoenas are otherwise appropriate—and for the reasons stated by defendants in their motion to quash, they are not—the government should have an opportunity to review any materials that Verizon Wireless may produce before those materials are provided to the special prosecutor. These materials from defendants' work cell phones belong to the federal government, and neither Verizon Wireless nor the special prosecutor have a right to waive the federal government's right to assert all appropriate privileges.[3]

## II. THE SUBPOENAS SHOULD BE QUASHED BECAUSE THEY SEEK IRRELEVANT INFORMATION, LACK SUFFICIENT SPECIFICITY, AND ARE UNREASONABLE AND OPPRESSIVE.

In addition, by seeking information from March 1, 2021 to May 12, 2021, the special prosecutor's subpoenas are inherently overbroad. The contempt charges are based upon conduct that occurred on a single day, May 10, 2021.[4]

---

[3] To the extent the subpoenas seek records of the defendants' electronic communications (including the contents thereof), it may raise additional issues under the Stored Communications Act, 18 U.S.C. 2703, the Constitution, or other sources of federal law. *Cf. Carpenter v. United States*, 138 S. Ct. 2206, 2212, 2221 (2018).

[4] *See* ECF No. 21 at 1 ("On or about Monday, May 10, 2021, [defendants] did, in concert and in conspiracy, misbehave by ordering or allowing a deputy U.S. marshal, one of their subordinates, to remove three criminal defendants . .

5

The special prosecutor's subpoenas, which lack any specificity and seek information that pre-dates the alleged contumacious conduct by two months, are thus inherently unreasonable and oppressive. This is particularly true where the federal government would need to review over two months of materials to determine whether any materials should be withheld on privilege or other grounds. *Hardy*, 224 F.3d at 756 (quashing criminal subpoena that would have required the government to review two-and-a-half months of tape because such a request was unreasonable). For this reason alone, the Court should quash the special prosecutor's subpoenas.

**CONCLUSION**

For the foregoing reasons, as well as those raised by defendants, the special prosecutor's subpoenas should be quashed.

Dated: October 5, 2021

                Respectfully submitted,

                BRIAN D. NETTER
                Deputy Assistant Attorney General
                Civil Division

                JENNIFER D. RICKETTS
                Director, Federal Programs Branch

---

. from this courthouse, without first notifying or asking permission from this Court and in violation of each defendant's scheduling order, causing said criminal defendants' hearings to be delayed, and thereby obstructing the administration of justice in those defendants' cases."); ("Alternatively, under 18 U.S.C. § 401(3), on or about Monday, May 10, 2021, [defendants] did, in concert and conspiracy, resist three of this Court's lawful scheduling orders by ordering or allowing a deputy U.S. marshal, one of their subordinates, to remove three criminal defendants . . . from this courthouse, each of whom was ordered to appear before this Court at the time specified in his respective order.")

CHRISTOPHER HALL
Assistant Branch Director

*/s/ Joshua E. Gardner*
JOSHUA E. GARDNER
Special Counsel
United States Department of Justice
Federal Programs Branch
1100 L St. NW, Room 11502
Washington, DC 20530
Tel.: (202) 305-7583
Fax: (202) 616-8470
Email: joshua.e.gardner@usdoj.gov

Attorneys for the United States

**CERTIFICATE OF COMPLAINCE WITH TYPE-VOLUME LIMITATION**

    The undersigned counsel hereby certifies that this brief complies with the word-count limitation in D.S.D. Civ. LR 7(B)(1) because the brief does not exceed 12,000 words. This certification is made in reliance on the word count of the Microsoft Word software used to prepare the brief, which indicates that the word-count volume is 1,597 words, including any headings and footnotes in the body of the brief.

                                         */s/ Joshua E. Gardner*